EDELMIRO MARTÍNEZ RIVERA, demandante y recurrido, *v.* SEARS, ROEBUCK DE PUERTO RICO, INC., demandada y recurrente.

*Número:* R-66-109        *Resuelto:* 12 de febrero de 1970

*Beverley, Rodríguez, Estrella & Pesquera* y *Roberto Bird Hoffman,* abogados del recurrente; *Julio Suárez Garriga, Francisco Coll Moya* y *Edelmiro Martínez, Jr.,* abogados del recurrido.

EL JUEZ ASOCIADO SEÑOR TORRES RIGUAL emitió la opinión del Tribunal.

Este es un pleito de daños por detención ilegal. Todo comenzó con las gestiones de la recurrente, Sears, Roebuck de Puerto Rico, Inc., para efectuar el cobro de una cuenta

por concepto de cierto equipo mobiliario que le adeudaba la Srta. Janine Busto. El 11 de mayo de 1961 la señorita Busto autorizó por escrito a la Sears a recoger dicho equipo en el salón de belleza que operaba en uno de los apartamientos de un edificio propiedad del recurrido, Lic. Edelmiro Martínez Rivera. Previendo la posibilidad de no encontrarse en el local, como en efecto ocurrió, la señorita Busto le expresó por escrito a la recurrente: "De yo no estar en el local, favor de procurar al señor Vicente en la Casa Biascoechea en Loíza 1859 que se encuentra frente al edificio. La dirección correcta es: Calle Loíza 1902 esq. Las Flores, Apt. 5." Exh. B de la demandada.

A tenor con esta autorización, el Sr. Conrado Santos, agente de cobros de la recurrente, fue a tomar posesión del equipo. Encontró el local cerrado y no pudo conseguir al señor Vicente. Se comunicó entonces por teléfono con el Lic. Martínez Rivera solicitándole que le permitiese entrar al apartamiento y apoderarse del equipo. Martínez Rivera se negó expresándole que la señorita Busto le adeudaba varios cánones de arrendamiento, cuya deuda tenía preferencia. Martínez Rivera ratificó por escrito su posición a la recurrente llamándole la atención de que la deuda de los cánones debía liquidarse antes de que se sacara el equipo del local. Así las cosas, la recurrente radicó un pleito en cobro de dinero contra la señorita Busto, obteniendo del Tribunal de Distrito un mandamiento de embargo en aseguramiento de sentencia sobre el mencionado equipo. Se designó depositario de bienes al señor Santos. En varias ocasiones Santos y el alguacil trataron de diligenciar el embargo pero encontraban siempre el local cerrado y tampoco pudieron comunicarse con el señor Vicente. Siendo infructuosas las gestiones en este sentido, se dirigieron con el mandamiento a la oficina del licenciado Martínez Rivera y le solicitaron que le abriera el local, mostrándole la autorización escrita de la señorita Busto. Martínez Rivera se negó aduciendo su derecho preferente a cobrar

los cánones, que él tenía el deber de garantizar la posesión del local a la arrendataria y que la orden de embargo no iba dirigida a él. El alguacil y el señor Santos informaron al Hon. Juez Pérez Rodríguez de la situación, quien sugirió al señor Santos que le indicase al abogado de la recurrente que radicase una moción explicativa y le solicitase una orden dirigida expresamente al licenciado Martínez. El abogado de la recurrente, Lic. René Benítez, ([1]) se comunicó por teléfono con Martínez Rivera solicitándole su cooperación, pero éste se reiteró en su negativa repitiendo las anteriores razones. El licenciado Benítez le hizo referencia a la autorización de la señorita Busto y le invitó a que radicase una moción de intervención en el pleito de cobro de dinero alegando su derecho preferente. En vista de esta conversación y de las instrucciones del Hon. Juez Pérez Rodríguez, el licenciado Benítez radicó una moción explicativa y un proyecto de orden. El Juez Pérez Rodríguez dictó, entonces, una orden requiriendo expresamente al licenciado Martínez Rivera para que permitiera a la recurrente entrar en el local de su propiedad para ultimar el embargo. ([2]) Reiteró Martínez Rivera su negativa al alguacil cuando éste le llevó la nueva orden, manifestándole que si quería podía practicar el embargo tumbando la puerta. El alguacil regresó al Tribunal e informó al Juez Pérez Rodríguez la actitud del licenciado Martínez Rivera. Mientras tanto, ese mismo día, 20 de junio de 1961, el Lic. Edelmiro Martínez, Jr., hijo del licenciado Martínez Rivera, radicó una demanda contra la señorita Busto en

([1]) Propiamente el abogado de la recurrente en el caso de cobro de dinero contra la señorita Busto lo fue el Lic. Carlos Ortiz, quien se encontraba fuera de Puerto Rico. Durante su ausencia atendía sus asuntos el Lic. René Benítez.

([2]) Aunque los términos de la orden eran en el sentido de que el licenciado Martínez Rivera "permita a la demandante entrar en el local de su propiedad antes referido, a los fines de ultimar el embargo trabado en este caso", el licenciado Martínez Rivera entendió claramente que el propósito específico de la orden era que abriera el apartamiento ocupado por la señorita Busto. T.E. Vol. I, pág. 38.

cobro de los cánones de arrendamiento, obteniendo el mismo día una orden de embargo en aseguramiento de sentencia, precisamente, sobre el mismo equipo objeto de la orden de embargo cuyo delingenciamiento, como hemos visto, venía siendo intentado infructuosamente por la recurrente.

Luego de la conversación con el alguacil, el Juez Pérez Rodríguez llamó por teléfono al licenciado Martínez Rivera a su oficina pero éste no estaba presente. Habló sobre el asunto con la secretaria, dejándole razón al licenciado Martínez Rivera para que lo llamara. Martínez Rivera no le contestó la llamada. Fue, entonces, que dictó la orden de arresto contra Martínez Rivera que dio base a este pleito. Dicha orden dispuso el arresto y encarcelación del licenciado Martínez Rivera hasta que éste obedeciera la orden relacionada con el embargo, sin previa vista y sin fianza. El alguacil no llegó a ejecutar la encarcelación del licenciado Martínez Rivera, sino que meramente le notificó que estaba bajo arresto en su propia oficina, ubicada en el sexto piso del edificio González Padín en San Juan, accediendo a que el licenciado Martínez Rivera, Jr., gestionara un recurso de *Habeas Corpus*. El Tribunal Superior, Sala de San Juan, dejó sin efecto la orden de arresto en el caso de *Habeas Corpus*, Núm. 61-4640, *Edelmiro Martínez Rivera, peticionario* v. *Juan A. Padilla.*

El licenciado Martínez Rivera instó demanda de daños y perjuicios por arresto ilegal, alegando que la orden de arresto y los procedimientos subsiguientes a la misma fueron instigados, gestionados y procurados voluntaria y maliciosamente por la demandada-recurrente, Sears, Roebuck de Puerto Rico, Inc. El tribunal de instancia declaró con lugar la demanda concluyendo que:

"Por otra parte, estamos convencidos, de que el Sr. Santos, agente de la demandada, molesto por la actitud decidida e inflexible del demandante, varias veces repetida, de no acceder a entregar la llave del apartamento, ni abrirlo él personalmente,

se apartó del interés principal y genuino de practicar el embargo, adoptando la actitud vindicativa de someter al demandante a un proceso judicial, haciendo manifestaciones al Sr. Juez con relación a la conducta del demandante, claramente inciertas, a sabiendas de que lo eran."

A tenor con lo anterior, el Tribunal condenó a la recurrente a pagar al licenciado Martínez Rivera la cantidad de $1,500 en concepto de daños y $300 para honorarios de abogado.

No conforme con dicha sentencia, la recurrente nos solicitó su revocación apuntando la comisión de ocho errores que, en esencia, van dirigidos a atacar tanto la apreciación como la insuficiencia de la prueba.

Expedimos el auto para revisar.

■ El examen minucioso que hemos hecho del récord [3] nos convence de que la prueba desfilada es insuficiente para sostener las anteriores conclusiones, sin las cuales no puede prosperar la acción ejercitada, ya que faltaría uno de sus elementos esenciales, a saber, que la restricción de la libertad del demandante haya sido el resultado de los actos del demandado aconsejando, induciendo, instigando o solicitando la iniciación de un procedimiento que culmine en la privación de la libertad del demandante. Véase *García Calderón* v. *Galiñanes Hermanos*, 83 D.P.R. 318 (1961) y casos allí citados.

---

[3] La prueba testifical del demandante consistió en su propio testimonio, consistiendo la documental en el expediente y el récord del recurso de *Habeas Corpus Edelmiro Martínez Rivera* v. *Juan A. Padilla*, Civil Núm. 61-4640, copia de su demanda, orden y emplazamiento contra la señorita Busto, sobre desahucio, tres cartas de la señorita Busto al demandante y tres cheques cancelados. La prueba testifical del demandado consistió en los testimonios del Sr. Conrado Santos, Lic. René Benítez, Hon. Juez Pérez Rodríguez y de los alguaciles Juan A. Padilla y Salvador Betancourt. La prueba documental consistió en la carta de la señorita Busto autorizando a la Sears a recoger el mobiliario y en el récord del caso de cobro de dinero del licenciado Martínez Rivera contra la señorita Busto, Civil Núm. 61-3342.

De acuerdo con el propio testimonio del licenciado Martínez Rivera las gestiones de la Sears, a través de sus agentes, Santos y Benítez, en este caso consistieron en: a) llamada telefónica de Santos a Martínez Rivera preguntándole sobre el paradero de la señorita Busto e informándole del interés de la Sears en cobrar la deuda, T.E. Vol. I, págs. 26 y 27; b) visita del señor Santos a la oficina del licenciado Martínez Rivera el 19 de junio de 1961, acompañando al alguacil en el diligenciamiento del embargo, en calidad de depositario de los bienes a embargarse, T.E. Vol. I, pág. 35; c) llamada telefónica del licenciado Benítez al licenciado Martínez Rivera pidiéndole su cooperación para poder diligenciar el embargo, T.E. Vol. I, pág. 20; d) moción radicada por el licenciado Benítez en el pleito de cobro de dinero contra la señorita Busto informando al Tribunal sobre las dificultades en el diligenciamiento del embargo, Exh. 2 del demandante.

Nada hay en esta prueba que indique que la orden de arresto y encarcelación dictada por el Hon. Juez Pérez Rodríguez fue en forma alguna instigada, diligenciada, aconsejada o solicitada por la Sears o sus agentes. Por el contrario, aparece con toda claridad en el récord que dicha orden de arresto fue dictada por el propio Juez Pérez Rodríguez en el pleno ejercicio de su discreción, sin que en la misma tuviera intervención alguna la recurrente o sus agentes. Oigamos al propio Juez Pérez Rodríguez, quien obviamente es la mejor prueba sobre el particular:

LCDO. BEVERLEY:—

P. ¿Testigo puede usted decirnos, indicarle al Tribunal cuál fue la intervención en el caso a que hicimos mención ahora?

R. El depositario y el alguacil, según mi mejor recuerdo en vista de que no se pudo materializar el Aseguramiento de Sentencia en Cobro de Dinero que había ordenado el Tribunal comparecieron ante mi y me expusieron una serie de hechos y a base de esos hechos si mal no recuerdo, me comuniqué por

teléfono con la oficina del compañero, no estaba él presente, contestó una niña secretaria, le informé a la secretaria lo que interesaba a ver si era posible que se permitiera, se facilitara cumplir con la Orden del Tribunal sin necesidad de gestiones judiciales ulteriores y a esos fines recuerdo bien que le dije a la secretaria que cuando el compañero llegara que me llamara. *A la luz de los hechos que expuso la secretaria y el alguacil creí prudente dictar una Resolución contra el compañero ordenándole permitiera al alguacil cumplir con la Orden del Tribunal ordenando su ingreso hasta tanto lo permitiera.*

P. .    .    .    .    .    .    .    .

R. .    .    .    .    .    .    .    .

P. ¿Testigo qué información se le dió [*sic*] a usted respecto a la negativa o respecto a la imposibilidad de realizar el embargo en el Aseguramiento de Sentencia en el caso de Cobro de Dinero? ¿Cuáles fueron los hechos que expuso el alguacil y el depositario?

Lcdo. Suárez Garriga: —

Hay objeción.

R. Específicamente yo no recuerdo cuales fueron, pero sí la impresión que obtuve del resultado de los hechos me llevó a concluir que el compañero no está en condiciones de permitir el embargo *por la forma que se expresaba el alguacil de que no iba a permitir o que ningún Tribunal tenía orden o algo así por el estilo.*

P. .    .    .    .    .    .    .    .

R. .    .    .    .    .    .    .    .

Lcdo. Beverley: —

P. ¿Qué razón tuvo testigo para la expedición de la Orden de Arresto finalmente?

R. *Las razones fueron una cuestión de apreciación personal dentro de mi función como Juez. Entendí que los hechos específicamente y la transacción eran de tal naturaleza que no habían tenido resultado positivo y consideré que hacía falta una gestión más enérgica para darle cumplimiento a la Orden de la Corte.*

P. *¿Testigo cuando usted hace la llamada telefónica al demandante que no fue contestada por él, estaba presente el depositario?*

R. No recuerdo, pero tengo la impresión que no.

P. ¿Testigo quién preparó la orden? La pregunta que quiero hacerle ahora, ¿la Orden de Arresto dirigida contra el demandante quién la preparó?

R. *La Resolución en el caso la preparé yo.*

P. *¿Usted personalmente?*

R. *La dicté yo.*

P. *¿Recuerda usted si estuvo presente el depositario en ese momento?*

R. *No estuvo presente; en mi oficina cuando estoy trabajando no permito a nadie."* T.E. Vol. III, págs. 5–9. (Énfasis nuestro.)

También aparece del récord que el arresto del licenciado Martínez Rivera fue llevado a cabo por el alguacil personalmente sin que en dicha gestión estuviese presente el señor Santos. Véase el testimonio del licenciado Martínez Rivera. T.E. Vol. I, págs. 47 y 48.

Tampoco es correcta la conclusión del tribunal recurrido de que "como el arresto de éste [Martínez Rivera] se efectuó en el trámite del aseguramiento de sentencia que interesaba la demandada, su responsabilidad por el daño causado al demandante es indiscutible." No basta para imponer responsabilidad, bajo las circunstancias de este caso, que el arresto haya sido incidental al trámite de un procedimiento judicial—diligenciamiento de un embargo—sino que es necesario que la privación de la libertad sea el resultado de los actos del demandado, aconsejando, induciendo, instigando o solicitando la iniciación de los procedimientos. *García Calderón* v. *Galiñanes Hermanos*, supra. Como ya vimos, la prueba es clara al efecto de que la orden de arresto fue dictada por el Juez Pérez Rodríguez en el ejercicio de su discreción, a base de su conversación con la secretaria del licenciado Martínez Rivera y con el alguacil, sin que la recurrente o sus agentes intervinieran en forma alguna con la misma.

La contención del recurrido en su breve memorando de oposición a la expedición del auto es que: a) la ilegalidad del

arresto era evidente; b) que como arrendador de la señorita Busto, él venía obligado bajo el Art. 1444 del Código Civil, 31 L.P.R.A. sec. 4051, a mantener al arrendatario en el goce pacífico del arrendamiento por todo el tiempo del contrato y la recurrente no podía obligar al demandante a incurrir en la infracción de esa disposición de ley y a asumir la consiguiente responsabilidad para con su inquilina por tal cosa; c) que la recurrente no necesitaba que el recurrido le ayudara a ejecutar la orden de embargo, ya que de acuerdo con el Art. 178 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 819, el alguacil podía efectuar el embargo tumbando la puerta del apartamiento de la señorita Busto.

Estos argumentos, más el de su alegado crédito preferente contra la señorita Busto, fueron, precisamente, los que adujo el recurrido al alguacil para no honrar el mandamiento de embargo del Tribunal de Distrito.(⁴) Los mismos son inequívocamente frívolos. Basta señalar, en cuanto a su obligación para con la señorita Busto en su carácter de arrendador, que ésta renunció por escrito su derecho al autorizar a la recurrente a recoger el mobiliario, Exh. A de la demandada, y que su actuación permitiendo al alguacil la entrada al apartamiento en nada le perjudicaba, pues, quedaba plenamente protegida por la orden específica del Tribunal. Pero, más aún, el argumento resulta vano al considerar que el propio recurrido no paró mientes en ejecutar un embargo sobre los mismos bienes en su propio beneficio cerrando con candado el apartamiento de la señorita Busto lo cual impedía a todas luces el goce y disfrute del mismo por aquélla.(⁵)

---

(⁴)Salvo el argumento de la ilegalidad que surgió con la orden de arresto y que fue debidamente dilucidado en el recurso de *Habeas Corpus* instado por el recurrido. No tiene pertinencia alguna aquí.

(⁵)Esto surge de la propia certificación del alguacil al dorso del mandamiento que lee:

"Certifico que recibí el presente mandamiento de embargo el día 20 de Junio de 1961 Dando Cumplimiento del mismo día 20 de Junio de 1961

■ En verdad, no podemos interpretar la actuación del recurrido en otra forma que no sea como una actuación para demorar el diligenciamiento del embargo de la recurrente con el propósito de ganar tiempo para diligenciar el suyo. Fortalece esta interpretación de su conducta la fallida pretensión del recurrido ante el alguacil y ante el abogado de la recurrente, de que como arrendatario él tenía un crédito preferente contra la señorita Busto. El crédito del recurrido al igual que el de la recurrente gozan de la misma preferencia. Art. 1822, supra, (6) razón por la cual su único derecho se limitaba a prorratear el valor de los muebles, conforme lo dispone el Art. 1826 del Código Civil, 31 L.P.R.A. sec. 5211. (7)

---

a las 3 de la tarde en la Calle Loiza de Santurse P R en el no [sic] 1902. *Por designación de la parte demandante procedi a cerrar el local no. 5 del segundo pizo [sic] de dicho edificio con un candado que me dio el demandante Sr. Edelmiro Martínez Rivera. No pude notificar a la demandada porque el local estaba cerrado.* Y no pude pasar inbentario [sic] porque recibi intrucciones del demandante que al anotificar [sic] a la demandada pedirá al Tribunal una Providencia para inbentariar [sic] los bienes que se encuentran en el local. Certifico además que deje pegado en la puerta delantera copia del mandamiento devidamente [sic] diligenciado. Y le entregue y [sic] llave del candado al depositario.
San Juan Puerto Rico 20 de Junio de 1961
(Énfasis nuestro.)

Jesús Cortes
Márshal General"

(6) El Art. 1822 en lo pertinente dispone:
"Con relación a determinados bienes muebles del deudor, gozan de preferencia:

(1) Los créditos por construcción, reparación, conservación o precio de venta de bienes muebles que estén en poder del deudor, hasta donde alcance el valor de los mismos.

.   .   .   .   .   .

(7) Los créditos por alquileres y rentas de un año, sobre los bienes muebles del arrendatario existentes en la finca arrendada y sobre los frutos de la misma."

(7) El Art. 1826 del Código Civil en lo pertinente dispone:
"Los créditos que gozan de preferencia con relación a determinados bienes muebles, excluyen a todos los demás hasta donde alcance el valor del mueble a que la preferencia se refiere.

Pero, aunque el recurrido hubiese estado convencido de que la ley le favorecía en este extremo, era su deber llevar ante la consideración del Tribunal de Distrito su contención, bien mediante una acción de tercería, de acuerdo con el procedimiento establecido en la Ley del 14 de marzo de 1907, 32 L.P.R.A. secs. 1171 a 1190, o, solicitando intervenir en el pleito de cobro de dinero, a lo cual le invitó el abogado de la recurrente. También pudo haber llevado a la atención del Juez Pérez Rodríguez su oposición contestando la llamada telefónica.

No podemos dar nuestra aprobación a la pretensión del recurrido de que el alguacil llevara a cabo el embargo tumbando la puerta. La violencia nunca es favorecida en los procedimientos judiciales y su uso está limitado a casos verdaderamente extraordinarios. Así lo reconoce en el Art. 178 del Código de Enjuiciamiento Civil, *supra*, en el cual basa el recurrido su pretensión. Dicho artículo sabiamente dispone que antes de acudir a la fuerza, el alguacil requerirá públicamente la entrega de los bienes. (⁸) Esto fue lo que hizo el alguacil, pedirle al licenciado Martínez Rivera que permitiera el embargo abriendo el apartamiento para evitar el tumbar la puerta.

■ En verdad la actitud del recurrido en todo este asunto no apela no a la razón ni a la simpatía. Pesa en nuestro ánimo el hecho de que el recurrido es un abogado de larga experien-

----

Si concurren dos o más respecto a determinados muebles, se observarán, en cuanto a la prelación para su pago, las reglas siguientes:

. . . . . . . .

(4) En los demás casos el precio de los muebles se distribuirá a prorrata entre los créditos que gocen de especial preferencia con relación a los mismos."

(⁸) El Art. 178 en lo pertinente dispone:

"Si los bienes o cualquiera parte de ellos estuvieren ocultos en algún edificio o sitio cercado, el alguacil requerirá públicamente su entrega. Si no le fueran entregados, deberá disponer que se abra a viva fuerza el edificio o lugar cerrado y se apoderará de los bienes, y si fuere necesario, llamará en su auxilio la fuerza pública."

cia en este foro. Su misión como tal no se limita meramente a representar intereses privados—en este caso los suyos—sino a ser un instrumento leal y eficaz de la administración de la justicia y del orden en nuestra sociedad. Como servidores de la justicia, los abogados son los llamados a socorrerla—abogado viene de *advocatus* que precisamente significa llamado, según Escriche en su *Diccionario Razonado de Legislación y Jurisprudencia*, Vol. I, pág. 60, "porque entre los romanos en los negocios que pedían conocimiento de las leyes, llamaba cada cual en su socorro a los que hacían un estudio particular del Derecho."—brindando su cooperación al Tribunal y a los funcionarios judiciales para el debido cumplimiento de los mandamientos judiciales. Cuando crean que las órdenes de un tribunal sean equivocadas o lesionan indebidamente los derechos propios o de sus representados deben acudir al Tribunal a exponerle sus contenciones con respeto y deferencia y no hacer caso omiso de ellos u obstaculizarlos con argumentos más o menos legalistas.

*Se revocará la sentencia recurrida y se declarará sin lugar la demanda, imponiéndosele al demandante-recurrido el pago de $500 de honorarios de abogado, más las costas incluyendo las del presente recurso de revisión.*

No intervinieron el Señor Juez Presidente y el Señor Juez Asociado Blanco Lugo.